1
2
3
4

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

5
6
7

WATERTON GLOBAL MINING COMPANY, LLC and CHUBB INSURANCE COMPANY OF CANADA,

8

         Plaintiffs,

9

    vs.

10

CUMMINS ROCKY MOUNTAIN, LLC, CUMMINS, INC., and DOES 1–40, inclusive,

11
12

       Defendants.

3:14-cv-0405-RCJ-VPC

**ORDER**

13   This case arises out of property damage caused by a fire that started in Defendants

14   Cummins, Inc. and Cummins Rocky Mountain, LLC's ("CMR") (collectively "Defendants")

15   allegedly defective engine.  Pending before the Court are Defendants' Motion to Dismiss (ECF

16   No. 29) and Motion in Limine (ECF No. 26).

17   **I.      FACTS AND PROCEDURAL HISTORY**

18   On December 14, 2011, a fire started at the Hollister Mine facility located at the Carlin

19   Trend in Elko County, Nevada. (Compl. ¶ 1, ECF No. 1-2).  The fire was allegedly caused by an

20   engine manufactured by Cummins, Inc. and installed by CRM in a generator located at the

21   facility.  The fire destroyed that generator as well as a second generator, which together acted as

22   the primary source of electricity for the Hollister Mine. (*Id.* ¶¶ 11, 13).

23   At the time of the fire, the Hollister Mine was owned by Great Basin Gold Inc. ("Great

24

1

Basin").  Great Basin had secured an insurance policy from Plaintiff Chubb Insurance Company ("Chubb") prior to the fire, which covered the type of loss the fire allegedly caused. (*Id.* ¶ 8). Great Basin made a claim on its insurance policy, and Chubb paid Great Basin an amount in excess of $10,000, thereby subrogating itself to the rights of Great Basin against all responsible parties. (*Id.*).

Subsequently, Waterton acquired assets from Great Basin through an Asset Purchase Agreement ("APA") that allegedly included Great Basins' claim for damages related to the damage caused by the fire at the Hollister Mine.  Plaintiffs allege that Defendants acts or omissions caused Great Basin damages that were not covered by insurance in an amount exceeding $10,000. (*Id.* ¶ 9).  Plaintiffs allege that the engine failed, causing the fire and resulting in severe damage to the engine itself, the generator, as well as to other property located at the facility. (*Id.* ¶ 12).  Plaintiffs also allege that Defendants were responsible for assembling, inspecting, testing, designing, and installing the engine so that it would not fail and cause a fire. (*Id.* ¶ 13).  Plaintiffs assert that the property damage at issue in this case occurred because of Defendants' improper manufacture, design, and installation of the engine. (*Id.* ¶ 15).

The Complaint includes four causes of action.  The first cause of action claims strict products liability and alleges that a defect existed in Defendants' engine that rendered it unreasonably danagerous. (*Id.* ¶ 20).  The second cause of action claims negligence and alleges that Defendants acted carelessly and negligently in assembling, inspecting, and installing the engine. (*Id.* ¶ 27).  The third cause of action claims a breach of implied warranties and alleges that the engine was improperly manufactured and unreasonably failed. (*Id.* ¶ 33).  The fourth cause of action claims a breach of express warranties and alleges that Defendants warranted that

1    the engine would be built in compliance with industry standards and would fulfill the purpose of

2    generating electricity in the Hollister Mine.

3          This action was initially filed in state court and then removed to this Court by

4    Defendants. (ECF No. 1).  Defendants now move for dismissal of the Complaint pursuant to

5    Rule 12(b)(6) for failure to state a claim.  Defendants also filed a Motion in Limine requesting

6    that the Court preclude Waterton and Chubb from claiming "replacement value" damages for the

7    generators.  The Court addresses each Motion in turn.

8    **II.     MOTION TO DISMISS**

9          **A.  Legal Standard**

10         The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the

11   legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The issue

12   is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer

13   evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)

14   (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed

15   factual allegations, but it must plead "enough facts to state a claim to relief that is plausible on its

16   face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell*

17   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

18   (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows

19   the court to draw the reasonable inference that the defendant is liable for the misconduct

20   alleged").  Even though a complaint does not need "detailed factual allegations" to pass Rule

21   12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the

22   speculative level . . . on the assumption that all the allegations in the complaint are true (even if

23   doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or

24

'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B. Analysis**

**1. Tort Claims**

Defendants argue that Waterton's first and second causes of action for strict product liability and negligence must be dismissed because Nevada law does not permit the assignment of tort claims. It is clear that under Nevada law tort claims involving personal injuries are not assignable, meaning that the right to bring a cause of action for injuries of a personal nature cannot be transferred. *Achrem v. Expressway Plaza Ltd. P'ship*, 917 P.2d 447, 448 (Nev. 1996); *Davenport v. State Farm Mut. Auto. Ins. Co.*, 404 P.2d 10, 11 (Nev. 1965). It is not entirely clear, however, whether Nevada law precludes the assignment of tort claims arising from property damage.

Defendants cite *Achrem* in support of their contention that Great Basin could not as a matter of law assign its tort claims to Waterton through the APA. In *Achrem*, the Nevada Supreme Court dealt with the issue of whether funds from the settlement of a personal injury lawsuit could be assigned to a third party. The court noted that at common law, "an assignment of the right to a personal injury action was prohibited." 917 P.2d at 448. But the court also identified that many states today draw a distinction between assignment of the action itself and assignment of the proceeds of that action. *Id.* The difference is "when a tort action is assigned, the assignor loses the right to pursue the action . . . . However, when the proceeds of an action are assigned, the assignor retains control of the action and the assignee cannot pursue the action

independently." *Id.*  The court determined that the policy considerations underlying the prohibition against assignments of tort actions are not present in the assignment of proceeds. *Id.*

Although the *Achrem* court used the term "tort action" generally in its discussion regarding assignability, the context of the case implies that it was discussing specifically whether tort actions arising from personal injury could be assigned.  For instance, the *Achrem* court noted that "the assignability of the rights to a tort action" was first addressed in *Davenport*.  In that case, the Nevada Supreme Court was again concerned with whether the right to sue in tort for personal injuries could be assigned under Nevada law. 404 P.2d at 365.  Its ultimate conclusion was related to settlements of personal injury actions and the court's discussion focused solely on tort actions arising from personal injury.

In *Maxwell v. Allstate Ins. Co.*, 728 P.2d 812 (Nev. 1996), another case cited by the *Achrem* court, the issue was whether subrogation clauses in automobile insurance policies dealing with medical payments violated public policy.  There, the court stated that "[w]hether the subrogation clause is viewed as an assignment or as an equitable lien on the proceeds of any settlement, the effect is to assign a part of the insured's right to recover against a third-party tortfeasor." 728 P.2d at 814.  The court held that such an assignment is invalid because it deprived the insured from receiving the insurance benefits "for which he has paid a premium." *Id.* at 815.  The court's holding rested on public policy rationales related to the injured individual's ability to "fully recover his actual damages." *Id.*

The *Achrem* court stated that although *Maxwell* dealt with subrogation clauses, "the reasoning of *Maxwell* applies equally wherever an assignment agreement assigns to a third party the right of an injured plaintiff to recover against a tortfeasor." 917 P.2d at 449.  However, the *Achrem* court did not explain how the *Maxwell* decision applies or if the public policy reasons

1    identified in *Maxwell* expand beyond the context in which it was decided—personal injury.

2    Indeed, given the facts of the *Maxwell* case, it appears to the Court that the term "injured

3    plaintiff" refers to a plaintiff suffering personal injury rather than a property related injury. [1]

4         Thus, the Court finds that *Achrem* does not settle the issue of whether tort claims arising

5    from property damage may be assigned under Nevada law.  The Court, however, failed to locate

6    any Nevada case dealing specifically with whether tort actions related to interests in property are

7    assignable.

8         Where "there are no Nevada Supreme Court decisions directly on point, we 'must predict

9    how the highest state court would decide the issue using intermediate appellate court decisions,

10   decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Eichacker*

11   *v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004) (citing *S.D. Myers, Inc. v. City*

12   *and Cnty. of S.F.*, 253 F.3d 461, 473 (9th Cir. 2001)).  Applying this standard to the present case,

13   the Court predicts that the Nevada Supreme Court would likely hold that a tort action based on

14   property damage may be assigned without violating law or policy.

15        The test for assignability of a cause of action in Nevada appears to be whether the cause

16   of action survives to the personal representative of the assignor. *See Davenport*, 404 P.2d at 12

17   (stating that "it is now quite generally accepted that the assignability of the right to sue in tort for

18   personal injuries is governed by the test of survivorship").  Indeed, "[t]he right to assignment of a

19   cause of action for injury to property is generally recognized because of the survivability of the

---

20   [1] Defendants also cite *Volvo Construction Equipment Rents, Inc. v. NRL Rentals, LLC*, No. 2:09-cv-00032-JCM-

21   VCF, 2012 WL 27615 (D. Nev. Jan. 3, 2012), for the proposition that Nevada does not allow the assignment of tort
     claims arising from property damage. (Mot. to Dismiss 5, ECF No. 29).  In *Volvo*, the court considered whether the

22   plaintiff could pursue causes of action in tort assigned to it by a third party in a non-personal injury case.  Judge
     Mahan noted briefly that an "[a]ssignment of tort claims violates public policy because it eliminates the injured
     party's ability to prosecute the action independently." 2012 WL 27615, at *2 (citing *Achrem*, 917 P.2d at 449).

23   Based on a single citation to *Achrem*, the court found that "under Nevada law an assignment of a tort claim is
     invalid." *Id.*  However, no analysis was conducted as to whether the *Achrem* holding was limited to the personal
     injury context in which it was decided or whether the Nevada Supreme Court intended to prohibit the assignability

24   of all tort actions.  Accordingly, the Court finds that the *Volvo* decision holds no persuasive authority as to the
     current state of Nevada law on this issue.

6

cause action, whether the cause of action is, technically speaking, for a tort or for breach of contract." 6A C.J.S. *Assignments* § 51 (2014).

The Nevada legislature has provided for the survival of all causes of action. Nev. Rev. Stat. § 41.100(1) ("[N]o cause of action is lost by reason of the death of any person, but may be maintained by or against the person's executor or administrator.").  As a matter of public policy, however, the Nevada Supreme Court has recognized specific instances where a particular cause of action is not assignable, including personal injury claims, *Achrem*, 917 P.2d at 448, legal malpractice claims, *Chaffee v. Smith*, 645 P.2d 966, 966 (Nev. 1982), and fraud claims, *Prosky v. Clark*, 109 P. 793, 794 (Nev. 1910).

It appears that a significant policy reason for precluding the assignment of the tort action in these cases is premised on the personal nature of the claim itself.  In *Achrem*, the court cited to *Karp v. Speizer*, 647 P.2d 1197 (Ariz. Ct. App. 1982), an Arizona case dealing with the assignment of personal injury torts.  There, the Arizona court recognized that actions for personal injuries are based in large part on the pain and suffering experienced by the victim herself. 647 P.2d at 1199.  Similarly, in *Chaffee*, the Nevada Supreme Court held that "[t]he decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client." 645 P.2d at 966.  Again focusing on the impact to the victim, the *Prosky* court determined that "[r]ights of action based on fraud . . . are held by the courts to be not assignable, but are personal to the one defrauded." 109 P. at 794.

There is no indication, however, that the policies mentioned in *Achrem*, *Chaffee*, and *Prosky* would apply in situations where a cause of action for damage to property is assigned, since the harm alleged in such a claim is specific to the property rather than the individual. *TMJ Haw., Inc. v. Nippon Trust Bank*, 153 P.3d 444, 452 (Haw. 2007) (noting that "personal" tort

claims involve "torts to the person or character, where the injury and damage are confined to the body and the feelings" rather than "those that arise out of an injury to the claimant's property or estate").  Damage to property harms the property owner due to the individual's status as the property's owner.  Because the property itself may be transferred, the right to recover for the damage thereto may also be transferred. *See* 6A C.J.S. *Assignments* § 51 (noting that the right of action in tort involving damage to real or personal property is especially assignable "when the assignee has acquired title to the property").  The damage does not impact the owner in the same manner as harm suffered from a personal injury.  This is significantly different from tort claims involving personal harm where the individual herself is injured and permitting assignability may lead to "unscrupulous people . . . traffic[king] in pain and suffering." *Karp*, 647 P.2d at 1199 (quoting *Harleysville Mut. Ins. Co. v. Lea*, 410 P.2d 495, 498 (Ariz. Ct. App. 1966)).

Moreover, states with broad survivability statutes similar to that of Nevada have recognized the assignability of causes of actions for damage to property.  *See, e.g.*, *Timed Out, LLC v. Youabian, Inc.*, 177 Cal. Rptr. 3d 773, 780 (Ct. App. 2014) (recognizing a broad rule of assignability including the assignability of actions involving an injury to personal or real property)[2]; *St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 293 P.3d 661, 665 (Idaho 2013) (recognizing the general rule allowing claim assignment)[3]; *Webb v. Gittlen*, 174 P.3d 275, 278 (Ariz. 2008) (stating that under Arizona law, "claims generally are assignable except those involving personal injury")[4]; *Cooper v. Runnels*, 291 P.2d 657, 658 (Wash. 1955) (holding that

---

[2] *See also* Cal. Civ. Code § 954 ("A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.").
[3] *See also* Idaho Code § 55-402 ("A thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.").
[4] *See also* Ariz. Rev. Stat. § 14-3110 ("Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.").

"a tort claim for damage to property is assignable under the law of this state")[5].

And states that do not necessarily agree that survivability and assignability are always coterminous have generally allowed the assignability of property tort claims while precluding the assignability of personal causes of action. *See, e.g.*, *TMJ Haw., Inc.*, 153 P.3d at 452 (rejecting the survivability test and distinguishing between "personal" tort claims and "property" tort claims to determine whether the action may be assigned); *Midtown Chiropractic v. Ill. Farmers Ins. Co.*, 847 N.E.2d 942, 945 (Ind. 2006) (stating that a tort based in injury to property is assignable while a cause of action in tort to recover for personal injuries is not); *Gregory v. Lovlien*, 26 P.3d 180, 182 (Or. Ct. App. 2001) (recognizing that claims related to a "property rather than a personal interest" may be assigned); *Moss v. Taylor*, 273 P. 515, 519 (Utah 1928) (stating as "well established" that "[a] cause of action for injury to property is assignable").

The Court, therefore, finds that under Nevada law, a tort action to recover damages to property is likely assignable. Furthermore, "[u]nder the general rule as to the assignability of a right of action for injury to property, an assignment may be made of a right of action . . . for negligence involving damage to property . . . ." 6A C.J.S. § 51. Waterton's first and second causes of action for strict product liability and negligence that allegedly resulted in damage to the generators and the Hollister Mine facility may thus be maintained. Defendants' Motion is denied as to those claims.

**2. Breach of Implied and Express Warranties**

Defendants also argue that Plaintiffs' third and fourth causes of action must be dismissed because Waterton did not acquire any express or implied warranty claim that Great Basin may

---

[5] *See also* Rev. Code Wash. § 4.20.046 (stating that "[a]ll causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter . . . .").

9

have had with respect to the engine and the damage it allegedly caused. (Mot. to Dismiss 5, ECF No. 29).  The APA states in relevant part that:

> Subject to the terms and conditions of this Agreement and the Sale Order, and upon entry of the Sale Order, at the Closing, the Sellers shall sell, convey, assign, transfer and deliver to the Buyer, free and clear of all Liens (other than Permitted Liens) as provided in the Sale Order and Buyer shall purchase, acquire and accept from the Sellers, all of the Sellers' right, title, and interest in each and all of the Acquired Assets.  "**Acquired Assets**" means all properties, assets and rights of every nature, tangible and intangible, real or personal, now existing or hereafter acquired, whether or not reflected on the books or financial statements of the Sellers as the same shall exist on the Closing Date that are (a) owned by any Seller, (b) used or held in connection with the ownership, lease, use or operation of the Business and (c) not Excluded Assets.

(APA § 2.1, at 10, ECF No. 29-1).[6]  The APA further states that Acquired Assets include:

> [A]ll rights, Claims, actions, refunds, causes of action, suits or proceedings, rights of recovery, rights of setoff, right of recoupment, right of indemnity or contribution and other similar rights . . . against any Person, including all warranties, representations, guaranties, indemnities and other contractual Claims, in each case, to the extent related to the other assets set forth in this <u>Section 2.1</u> or the Assumed Liabilities . . . .

(*Id.* § 2.1(h), at 11).  According to Defendants, the APA "is clear" that "only those claims involving 'Machinery and Equipment' that is 'used or held for use in the operation of the business'" were transferred to Waterton. (Mot. to Dismiss 6, ECF No. 29).  They argue that because the warranty claims involve a generator that was destroyed more than a year before the sell, it is "not a piece of equipment being used or held for use in operation of the business." (*Id.*).

The Court finds that Defendants read the APA too narrowly.  As Waterton points out, the Acquired Assets include properties "(a) owned by any Seller" and "(b) used or held in connection with the ownership . . . of the Business."  The engine and generator, although

---

[6] Generally, on a motion to dismiss the court will not review documents that are not attached to the complaint, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), unless the complaint necessarily relies on the document, *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  Although the APA is not attached to Plaintiffs' Complaint, they do not object to the Court considering its provisions in ruling on this Motion and in fact they urge the Court to consider its terms. (Pls.' Opp'n 8, ECF No. 35).  The Court will do so, noting that the Complaint references the APA at least once. (*See* Compl. ¶ 10).

1    damaged and presumably no longer functional, appear to have still been owned by Great Basin

2    when the APA was signed.  And while the engine and generator were likely no longer useable at

3    the time of sale, that does not mean that Great Basin no longer "held" them "in connection with

4    the ownership" of the Hollister Mine.

5            Furthermore, the APA seems to expressly provide for the assignment of any warranties

6    related to equipment owned by Great Basin at the time of the sale.  Under the APA, Acquired

7    Assets also includes:

8             [A]ll of (i) the Sellers' owned equipment (including any cars, trucks, forklifts and
             other industrial vehicles, machinery (whether mobile or otherwise), materials,
9             furniture, fixtures, improvements, tooling and other tangible property used or held
             for use in the operation of the Business (the "***Owned Machinery and***
10            ***Equipment***") . . . (iii) the rights of the Sellers to any warranties, express or
             implied, and licenses received from manufacturers and sellers of the Machinery
11            and Equipment.

12   (APA § 2.1(b), at 10–11).  Defendants argue that because the engine was no longer operable it

13   cannot qualify as being "used or held for use in the operation of the Business." (Mot. to Dismiss

14   6).  The Court disagrees.  First, simply because a piece of equipment or machinery is not

15   functional does not necessarily mean that it is not being held for use in the operation of a

16   business.  A piece of machinery may at a minimum provide a source for spare parts.

17           Second, there is no indication that the parties intended to exclude broken equipment or

18   machinery from that which was transferred via the APA.  The APA covered all assets owned by

19   the Sellers and held in connection with the ownership of the Hollister Mine.  The allegedly

20   defective engine appears to fall into this category.  Additionally, beyond the provision specific to

21   the assignment of warranty rights related to the Owned Machinery and Equipment, the APA also

22   includes a general transfer of warranties related to "the other assets set forth in . . . Section 2.1."

23   (APA § 2.1(h), at 11).

24

11

1    Thus, even if Defendants dispute whether the warranties related to their engine and

2 generator actually transferred to Waterton, there is sufficient evidence before the Court for it to

3 determine that the warranty claims are at least plausible. *See Iqbal*, 556 U.S. at 678.  The Court

4 denies Defendants' Motion to Dismiss as to the third and fourth causes of action as well.

5 **III.**  **MOTION IN LIMINE**

6   **A.  Legal Standard**

7    A motion in limine has been defined as "any motion, whether made before or during trial,

8 to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v.*

9 *United States*, 469 U.S. 38, 40 n.2 (1984).  "A motion in limine is a request for the court's

10 guidance concerning an evidentiary issue." *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.

11 Supp. 2d 1036, 1046 (citing *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999)).  And

12 although the Federal Rules of Evidence do not explicitly authorize such a motion, trial judges

13 may rule on motions in limine based on their inherent authority to manage trials. *See Luce*, 469

14 U.S. at 41 n.4 (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to

15 "prevent inadmissible evidence from being suggested to the jury by any means")).

16    Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler*

17 *Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be

18 used to resolve factual disputes or weigh evidence. *C&E Servs., Inc. v. Ashland, Inc.*, 539 F.

19 Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence

20 must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.

21 2d 844, 846 (N.D. Ohio 2004).  "Unless the evidence meets this high standard, evidentiary

22 rulings should be deferred until trial so that questions of foundation, relevancy and potential

23 prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.

24

1   Supp. 1398, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may

2   save "time, costs, effort and preparation, a court is almost always better situated during the actual

3   trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216,

4   1219 (D. Kan. 2007).

5           In limine rulings are preliminary and therefore "are not binding on the trial judge [who]

6   may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,

7   758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

8   change, especially if the evidence unfolds in an unanticipated manner).  "Denial of a motion in

9   limine does not necessarily mean that all evidence contemplated by the motion will be admitted

10  to trial.  Denial merely means that without the context of trial, the court is unable to determine

11  whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

12          **B.  Analysis**

13          Defendants request that the Court preclude Plaintiffs from arguing that they are entitled

14  to the replacement value of the generators allegedly destroyed by the December 11, 2011 fire.

15  They claim that the proper measure of damages is the actual cash value of the destroyed property

16  and not the replacement value. (Mot. in Limine 2–3, ECF No. 26).

17           Under Nevada law, the value of destroyed property has been calculated based on "the

18  actual value of the property at the time and place it was destroyed," *Witt v. Nev. Cent. R. Co.*, 44

19  P. 423, 428 (Nev. 1896), the cost of repairs to restore the property to its former condition less

20  depreciation, *Richfield Oil Corp. v. Harbor Ins. Co.*, 452 P.2d 462, 467 (Nev. 1969), and the cost

21  to replace the property minus depreciation, *Harvey v. Sides Silver Mining Co.*, 1 Nev. 539, 543

22  (1865).

23          The evidence Defendants seek to exclude in this case relates in part to the quotes that

24

Chubb received for two used Cummins generators, valued at $1,765,370, which were comparable to the ones destroyed in the fire. (*See* Generator Bids, ECF No. 33-2, Ex. 5, at 3). This is the same amount that Plaintiffs determined it would cost to replace the generators. (*See* Damage Summary, ECF No. 33-2, Ex. 4, at 2).  Thus, even if the market value of the destroyed property were the only measure of damages under Nevada law, evidence regarding the amount that Plaintiffs would have to pay to acquire used Cummins generators seems quite relevant to the actual cash value of the destroyed generators.  More importantly, a jury needs to hear how Plaintiffs arrived at their calculation of damages, which inevitably will involve evidence that Defendants seek to exclude.

Therefore, the Court denies the Motion in Limine.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 29) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion in Limine (ECF No. 26) is DENIED.

IT IS SO ORDERED.

Dated:  February 19, 2015

_____
ROBERT C. JONES
United States District Judge